## PHILLIPS *v.* PAYNE.

Since 1847, pursuant to the act of Congress of the preceding year, the State of Virginia has been in *de facto* possession of the county of Alexandria, which, prior thereto, formed a part of the District of Columbia. The political department of her government has, since that date, uniformly asserted, and the head of her judicial department expressly affirmed, her title thereto. Congress has, by more than one act, recognized the transfer as a settled fact. A resident of that county, in a suit to recover the amount by him paid under protest for taxes upon his property there situate, is, therefore, estopped from raising the question as to the validity of the retrocession.

ERROR to the Supreme Court of the District of Columbia.

*Mr. W. Willoughby* and *Mr. S. Shellabarger* for the plaintiff in error.

*Mr. R. T. Daniel*, contra.

MR. JUSTICE SWAYNE delivered the opinion of the court.

This suit was brought to determine the validity of the retrocession by Congress tó the State of Virginia of that part of the District of Columbia, as originally constituted, which was ceded by Virginia to the United States. The plaintiff in error was the plaintiff in the court below. The case upon which he relies is thus set forth in his declaration: —

In pursuance of the Constitution of the United States, Virginia, by an act of her legislature of Dec. 3, 1789, ceded to the United States that part of her territory subsequently known as the county of Alexandria. Congress passed an act accepting the cession. Maryland ceded to the United States the county of Washington, and Congress accepted that cession also. The two counties constituted a territory ten miles square, which Congress set apart as the seat of the government of the United States, and organized as the District of Columbia, over which the Constitution of the United States required that Congress should exercise exclusive legislation in all cases whatsoever. Thereafter, on the 9th of July, 1846, Congress, in violation of the Constitution, passed an act purporting to authorize a vote to be taken by the people of Alexandria County to determine whether the county should be retroceded to the State of Virginia, and declaring, that, in case a majority of the votes should be cast in favor of retrocession, the county should be retroceded and for ever relinquished in full and absolute right and jurisdiction. A majority of the votes were cast for retrocession: whereupon, without any further action by Congress, the State of Virginia passed an act declaring that the county was reannexed, and formed a part of the State. Since that time the State has assumed to exercise full jurisdiction and control over the county, and to authorize the election of officers for the county, among whom is one known as the collector for the township of Washington. The defendant was elected such collector, and assumed to exercise the duties of his office. The State has also assumed to enforce the assessment and collection of taxes upon persons and property in the county. The plaintiff resides in the county, and owns a large amount of real estate and other property there. The defendant alleged that an assessment had been made upon this property; that there was payable to him as such collector, upon the assessment, the sum of $165.18; and he demanded payment. In the event of refusal to pay, he would have sold the property pursuant to the law of the State. To prevent the sacrifice which this would have involved, the plaintiff paid the money under protest; notifying the defendant at the time that he regarded the exaction as illegal and unauthorized, upon the ground that the county of

Alexandria was not within the jurisdiction of the State of Virginia, but that it was within the District of Columbia. He avers that the act of Congress of 1846, before mentioned, every thing done under it, and the law of Virginia reannexing the county to the State and extending her jurisdiction over it, are contrary to the Constitution of the United States, and illegal and void.

He therefore claims to recover the amount so paid to the collector.

The defendant demurred. The court below sustained the demurrer, and gave judgment for the defendant.

The question presented for our determination is, whether there was error in this ruling.

The law of prescription applies to nations with the same effect as between individuals. Lawrence's Wheat. 303, 304; Vattel, b. 2, c. 11, sects. 141, 146, 147, 149.

In cases involving the action of the political departments of the government, the judiciary is bound by such action. *Williams* v. *The Suffolk Ins. Co.*, 13 Pet. 420; *Garcia* v. *Lee*, 12 Pet. 511; *Kennet* v. *Chamberlain*, 14 How. 38; *Foster* v. *Nelson*, 2 Pet. 209; *Nabob of the Carnatic* v. *The East Ind. Co.*, 2 Ves., Jr., 60; *Luther* v. *Borden*, 7 How. 1; *Rhode Island* v. *Massachusetts*, 12 Pet. 714.

The judiciary recognizes the condition of things with respect to the government of another country which once existed as still subsisting, unless the political department of its own government has decided otherwise. *Kennet* v. *Chambers*, 7 How. 38.

For certain purposes, the States of the Union are regarded as foreign to each other. *Buckner* v. *Finley*, 2 Pet. 590; *Warden* v. *Arrel*, 2 Wash. (Va.) 298.

Under certain circumstances, a constitutional provision may, like a forfeiture, be waived by a party entitled to insist upon it. 6 Hill, 48; 24 Wend. 337; 3 Comst. 199, 511; 18 Barb. 585.

The acts of an officer *de facto*, within the sphere of the powers and duties of the office he assumes to hold, are as valid and binding with respect to the public and third persons as if they had been done by an officer *de jure*. *Elwood* v. *Monk*, 6 East, 235; *King* v. *Corp. Bedford*, 6 East, 368; *Tucker* v. *Aiken*, 7 N. H. 134; *Fowler* v. *Babe*, 9 Mass. 231; *Com.* v.

*Fowler*, 10 id. 291; *People* v. *Collins*, 7 J. R. 549. These propositions were referred to in the discussion at the bar, and we have not overlooked them.

But we do not invoke their aid, and have found it unnecessary to consider the effect of either of them in this case.

We shall place our judgment upon another and a different ground, and shall confine our further remarks to that subject.

The State of Virginia is *de facto* in possession of the territory in question. She has been in possession, and her title and possession have been undisputed, since she resumed possession, in 1847, pursuant to the act of Congress of the preceding year. More than a quarter of a century has since elapsed. During all that time, she has exercised jurisdiction over the territory in all respects as before she ceded it to the United States. She does not complain of the retrocession. The political departments of her government, by their conduct, have uniformly asserted her title; and the head of her judicial department has expressly affirmed it. *McLaughlin* v. *The Bank of Potomac*, 7 Gratt. 68. The United States have not objected. No murmur of discontent has been heard from them: on the contrary, Congress, by more than one act, has recognized the transfer as a settled and valid fact. Act of July 5, 1848, c. 92, 9 Stat. 244; Act of Feb. 2, 1871, c. 33, 16 Stat. 402; Rev. Stat. U. S., sect. 1795. Both parties to the transaction have been and still are entirely satisfied. If the objection taken by the plaintiff in error were maintained in the length and breadth insisted upon, serious consequences would follow. In that view, a part of them would be that all laws of the State passed since the retrocession, as regards the county of Alexandria, were void; taxes have been illegally assessed and collected; the election of public officers, and the payment of their salaries, were without warrant of law; public accounts have been improperly settled; all sentences, judgments, and decrees of the courts were nullities, and those who carried them into execution are liable civilly, and perhaps criminally, according to the nature of what they have severally done.

A government *de facto*, in firm possession of any country, is clothed, while it exists, with the same rights, powers, and duties, both at home and abroad, as a government *de jure*. It may

send ambassadors and make treaties. Such treaties bind the nation and descend in full force upon any succeeding government that may be established. The assailants of a king *de facto* in England are liable to be punished for treason. Such was the rule of the common law, and the celebrated statute of Henry VII. only reaffirmed it. The legislative and judicial authorities called into existence may proceed as if the prior government had not been displaced. All municipal functions may be performed without regard to the origin of the new polity. Cromwell's ambassadors were received everywhere. Hale accepted from him the place of a judge of the common pleas. After the Restoration, Charles. II. made him Chief Baron of the Exchequer, and subsequently Chief Justice of the King's Bench. The Code Napoleon was the work of a ruler whose government rose amid the ruins of a revolution, and was subsequently overthrown. The governments of both these rulers were doubtless regarded by the other governments of Europe as only *de facto.* Whether they were or were not *de jure* also is a question, which, in this case, it is unnecessary to consider.

In all cases where the United States have been called upon to recognize the existence of the government or the independence of any other country, they have looked only to the fact, and not to the right. Such has been the uniform course of our government. 1 Kent's Com. (Comst. ed.), 170; Vattel, b. 2, c. 12, sects. 196, 197; id., b. 4, c. 2, sects. 14, 18; 1 Hale's P. C. 101; Foster's Crown Law, pp. 397, 399; Camp. Lives of Ch. Justices, 526; Lawrence's Wheat. 49, note; id. 471, note.

The plaintiff in error is estopped from raising the point which he seeks to have decided. He cannot, under the circumstances, vicariously raise a question, nor force upon the parties to the compact an issue which neither of them desires to make.

In this litigation we are constrained to regard the *de facto* condition of things which exists with reference to the county of Alexandria as conclusive of the rights of the parties before us.                              *Judgment affirmed.*