## Case No. 16,413.

### UNITED STATES v. STURGEON et al.

[6 Sawy. 29.] [2]

District Court, D. Nevada. July 1, 1879.

#### INDIAN RESERVATIONS—INTRUSION OF WHITES.

The president having set apart the Pyramid Lake reservation for the use of Indians, the whites who go upon the reservation to fish, do so "contrary to law," within Rev. St. § 2147.

[Cited in U. S. v. Bridleman, 7 Fed. 903; U. S. v. Martin, 14 Fed. 821; Id., 17 Fed. 153; U. S. v. Howard, Id. 641.]

[This was an indictment against John Sturgeon and others for violation of section 2147 of the Revised Statutes.]

Charles L. Varian, for the United States. Robert M. Clarke, for defendants.

HILLYER, District Judge. The defendants, nine in all, are charged with returning to the Indian country, after having been removed, in violation of section 2148, Rev. St.

The special verdict and agreed facts show that these men were engaged within the limits of the Pyramid Lake Indian reservation, fishing, and dealing and trading in fish; that they were, by order of the proper authorities, removed from the reservation, and that thereafter they returned and resumed their former business of fishing.

That the reservation is Indian country, has just been decided in the case of U. S. v. Leathers [Case No. 15,581].

The only point not decided in that case material here is this: It is argued that taking fish inside the reservation is not unlawful; that the superintendent of Indian affairs has no power to decide what is contrary to law, or who is within the reservation contrary to law, under section 2147, or

without authority of law, under section 2149, and that the return after removal, to continue a lawful occupation, is no offense.

If this argument is sound, the whole purpose of the law, in setting apart lands for the separate use of the Indians, is defeated.

It has been shown in the Case of Leathers, [supra,] that very large powers and discretion in the management of Indian affairs have been committed to the president, secretary of the interior, commissioner of Indian affairs, and other agents.

It may be added, that by section 2131 of the Revised Statutes a superintendent of Indian affairs is authorized to revoke the license of any person whenever, in his opinion, it is improper to permit such person to remain in the Indian country. By section 2147 the superintendent, agents, and subagents have authority to remove from the Indian country all persons found therein contrary to law. By section 2149 the commissioner of Indian affairs is authorized and required, with the approval of the secretary of the interior, to remove from any tribal reservation any person who, in the judgment of the commissioner, may be detrimental to the peace and welfare of the Indians.

The military force may be used to remove such persons. I think these sections show that whether it is proper to permit a trader to remain in the Indian country, or whether any person is detrimental to the welfare of the Indians, are questions left in the one case to the superintendent of Indian affairs, and in the other to the commissioner and secretary of the interior. The courts will not review their decision in these matters, and the party removed, if he feels himself aggrieved, must seek redress by other means than a return to the reservation in defiance of the authority removing him.

But there is to my mind another good reason for holding that the present defendants were found in the Indian country contrary to law, when they were found established on the reservation engaged in the business of fishing,—i. e. catching them for sale.

The president has set apart the reservation for the use of the Pah Utes and other Indians residing thereon. He has done this by authority of law. We know that the lake was included in the reservation; that it might be a fishing ground for the Indians. The lines of the reservation have been drawn around it for the purpose of excluding white people from fishing there, except by proper authority. It is plain that nothing of value to the Indians will be left of their reservation if all the whites who chose may resort there to fish. In my judgment, those who thus encroach on the reservation and fishing ground violate the order setting it apart for the use of the Indians, and consequently do so contrary to law.

Hunting and trapping in the Indian country constitute, under section 2137, an offense; but these things are by no means the only

1 [Reported by Hon. William Cranch, Chief Judge.]

2 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

ones it is unlawful to do in the Indian country.

The reservation having been set apart by competent authority for the use of the Indians, anything which deprives them of that use is unlawful and contrary to law. When the defendants established their fisheries on the shores of the lake, they, contrary to law, appropriated to their own use a portion of that which the United States, acting through its duly authorized agents, had set apart for the use of the Pah Utes and other Indians. Therefore I think that, without reference to section 2149, these defendants were found within the Indian country, contrary to law, within the meaning of section 2147; that they were properly removed, under the orders of the president and secretary of the interior; and that by their return they have committed the offense defined in section 2148 of the Revised Statutes, as charged in the indictment.

They are all consequently adjudged guilty, and must appear for sentence July 15, 1879.

Affirmed on appeal to the circuit court. [Case unreported.]