## THE "FLORIDA."

On the night of Oct. 7, 1864, the rebel steamer "Florida" was captured in the port of Bahia, Brazil, by the United States Steamer "Wachusett," and brought thence to Hampton Roads, where, by a collision, she was sunk. The United States disavowed the act of the captain of the "Wachusett" in making the capture. He libelled the "Florida" as a prize of war. *Held*, that the libel was properly dismissed.

APPEAL from the Supreme Court of the District of Columbia.

On the night of the 7th of October, 1864, the United States steamer "Wachusett," under the command of Commander Collins, captured the rebel steamer "Florida," in the port of Bahia, in the empire of Brazil. The "Florida" had gone there to supply herself with provisions and for the repair of her

engine. She was anchored under cover of a Brazilian vessel of war, on the side next to the shore, and Commander Collins was notified that if he attacked her he would be fired upon by a neighboring fort and by the war vessels of the empire then present. The commander, availing himself of the darkness of the night, approached and fired upon the "Florida," received her surrender, attached a hawser to her extending from his vessel and towed her out to sea. He was pursued by a Brazilian war vessel, but escaped with his prize by superior speed. The steamers reached the United States at Hampton Roads. There the "Florida" was sunk by a collision, and lies where she went down. The American consul at Bahia was on board of the "Wachusett" at the time of the attack and incited it, and participated in the seizure. He returned to the United States with Commander Collins.

The Brazilian government demanded the return of the vessel and other reparation by the United States. The latter disavowed the capture, and the matter was amicably adjusted.

The commander libelled the "Florida" as prize of war. The court below dismissed the case, and he appealed to this court.

The case was argued by *Mr. Benjamin F. Butler* and *Mr. Frank W. Hackett* for the appellant.

The following points are taken from Mr. Hackett's brief : —

The captors are entitled to have the question of prize or no prize judicially determined. Act June 30, 1864, 13 Stat. 306. The adjudication is essential to their protection against her former owner, and, if in their favor, gives them also the right to proceed against the colliding vessel, if through its negligence the prize was sunk. The "Florida's" hull, guns, &c., are of some determinable value, and the question of ownership therein must be decided.

There is a *res* in existence. The ship is sunk in a river. The court will not inquire whether it will pay to raise her.

The executive has no right to instruct the judicial branch of the government as to the disposition of this libel, nor should its wishes have any force whatever in a tribunal sitting as a high court of prize.

In *The Elsebe* (5 Rob. 173), where Sir William Scott de-

cided that the power of the crown to direct the release of property seized as prize, before adjudication and against the will of the captors, was not taken away by any grant of prize conferred in the Order of Council, the Proclamation, or the Prize Act, orders had been given by the Lords of Admiralty to release the ships before the question was raised in the prize court. In the case at bar, no such order was ever given or promised to Brazil.

For the views of Mr. Wheaton on the subserviency of Sir William Scott to the orders of the crown, see Lawrence's Wheaton, 973 ; Roberts, Adm. & Prize, 480, 519.

In Great Britain, the issue of peace or war is lodged in the crown. The *jus persequendi* in capture being conveyed only in the Orders in Council, and all claims of the captor subordinated to the right of the crown to make such disposition as it pleases of the captured property, the Queen may control the conduct of a prize suit from the beginning. She has supreme power, with the advice of her council, to relax her belligerent rights, and so far to make law for the prize court. *The Phenix,* 1 Spink, 306.

The right to capture in the name of the United States comes not from the Executive, but from Congress. Until condemnation, no property vests in the sovereign or the captor. 10 Op. Att.-Gen. 519. Should the government desire immediately to make use of the captured vessel, an appraisement is made, and her value, in case of a subsequent condemnation, represents the prize fund. Act March 3, 1863, sect. 2.

The act of June 30, 1864 (*supra*), although modelled upon the English prize acts, presents certain features essentially distinct from them. In England, the prize court exercises, in time of war only, a peculiar but extraordinary jurisdiction, specially conferred by Parliament. Roberts, Adm. & Prize, 444. In this country, the prize courts are ever open to prize causes. Their jurisdiction extends not only to cases specially provided for by Congress, but to limits recognized by international law, or the custom and usage of nations. Id. 445. The captors themselves are authorized, under certain circumstances, to commence proceedings, a right unknown to the English prize law.

The question here is not, as in the "Elsebe," whether in time of war the Executive can give up to a foreign nation a captured vessel without making reparation to the captors, but whether, after having gained jurisdiction, and the custody of the vessel, a prize court, sitting in the United States in time of peace, will be controlled by the wishes of the Executive in determining whether the vessel be or be not good prize. The act makes it the duty of the district attorney, upon report of the prize-master, to file a libel against the property, and to "proceed diligently to obtain a condemnation and distribution thereof." Rev. Stat., sect. 4618. The Attorney-General, by opposing this libel and asking its dismissal, is asserting a power not granted by the act.

The alleged violation of the neutrality of Brazil is no defence to this libel. This is an objection which the neutral nation alone can interpose. *The Lilla*, 2 Sprague, 177; *The Sir William Peel*, 5 Wall. 517; *The Adela*, 6 id. 266.

A capture made within neutral waters is, as between enemies, deemed to all intents and purposes rightful; it is only by the neutral sovereign that its legal validity can be called in question, and as to him, and him only, is it to be considered void. *The Anne*, 3 Wheat. 435. It was there held that even a consul, unless specially authorized by his government, cannot interpose a claim of violated sovereignty. *The Sancta Trinita*, cited in a note to *The Anne*, shows that the French law is like the English and American in this respect. See 3 Phillimore, Int. Law, p. 453, where *The Anne* is approvingly cited. 1 Kent, Com. (12th ed.) 117, note 1; id. 121; *The Etrusco*, 3 C. Rob. 162, note.

It is objected that the capture of the "Florida" was in direct violation of the orders of the Secretary of the Navy, and therefore illegal and void; and that the distribution of the proceeds of her sale as prize would be a reward to officers for disobedience.

Those orders are nothing more than regulations for the discipline of the navy. Their violation subjects the offender to a court-martial. "If the sovereign should, by a special order, authorize the capture of neutral property for a cause manifestly unfounded in the law of nations, it would afford a complete

justification of the captors in all tribunals of prize." *Maison-naire* v. *Keating*, 2 Gall. 325.   The orders of the Secretary can go no further than international law itself in stamping the capture with illegality.   Commander Collins was, by a court-martial, found guilty of disobeying the orders of the Secretary, but the sentence of dismissal was not approved.

Nor can it be urged that the capture was not for the use and benefit of the United States.   It is a matter of public record that this government lodged before the tribunal of arbitration at Geneva claims for direct losses to our merchant marine inflicted by the " Florida," amounting to over $4,000,000.

Suppose that immediately on the arrival of the " Florida" at Hampton Roads the Southern Confederacy had collapsed, Brazil would have demanded reparation, but not the return of the vessel.   Would not she in that event have been decreed good prize?   What difference between this supposed state of things, and that where, after the war was over and the honor of Brazil had been satisfied, the wrecking company had raised the " Florida," pumped her out, and she had been sold, and the proceeds held as a prize fund ?   In neither case could the United States set up the invasion of neutral rights as against the claim of the captors to have the ship declared good prize.

Besides, the objection that neutrality was violated is completely removed by the seventh section of the act of 28th July, 1866 (14 Stat. 322), which enacts " that the Secretary of the Navy be, and he is hereby, authorized to dispose of the property saved from the rebel steamer ' Florida,' and distribute the proceeds thereof as other prize money is required by law to be distributed."   In accordance with this provision, the sum of $20,399.43 was distributed as prize-money to the captors, being, as between them and the United States, the value of certain property captured on board.   Congress, therefore, sanctioned the capture as lawful.

*The Solicitor-General, contra.*

MR. JUSTICE SWAYNE, after stating the facts, delivered the opinion of the court.

The legal principles applicable to the facts disclosed in the

record are well settled in the law of nations, and in English and American jurisprudence. Extended remarks upon the subject are, therefore, unnecessary. See Grotius, De Jure Belli, b. 3, c. 4, sect. 8; Bynkershoek, 61, c. 8; Burlamaqui, vol. ii. pt. 4, c. 5, sect. 19; Vattel, b. 3, c. 7, sect. 132; Dana's Wheaton, sect. 429 and note 208; 3 Rob. Ad. Rep. 373; 5 id. 21; *The Anne*, 3 Wheat. 435; *La Amistad de Rues*, 5 id. 385; *The Santissima Trinidad*, 7 id. 283, 496; *The Sir William Peel*, 5 Wall. 517; *The Adela*, 6 id. 266; 1 Kent, Com. (last ed.), pp. 112, 117, 121.

Grotius, speaking of enemies in war, says: "But that we may not kill or hurt them in a neutral country, proceeds not from any privileges attached to their persons, but from the right of the prince in whose dominions they are."

A capture in neutral waters is valid as between belligerents. Neither a belligerent owner nor an individual enemy owner can be heard to complain. But the neutral sovereign whose territory has been violated may interpose and demand reparation, and is entitled to have the captured property restored.

The latter was not done in this case because the captured vessel had been sunk and lost. It was, therefore, impossible.

The libellant was not entitled to a decree in his favor, for several reasons.

The title to captured property always vests primarily in the government of the captors. The rights of individuals, where such rights exist, are the results of local law or regulations. Here, the capture was promptly disavowed by the United States. They, therefore, never had any title.

The case is one in which the judicial is bound to follow the action of the political department of the government, and is concluded by it. *Phillips* v. *Payne*, 92 U. S. 130.

These things must necessarily be so, otherwise the anomaly would be possible, that, while the government was apologizing and making reparation to avoid a foreign war, the offending officer might, through the action of its courts, fill his pockets with the fruits of the offence out of which the controversy arose. When the capture was disavowed by our government, it became for all the purposes of this case as if it had not occurred.

Lastly, the maxim, " *ex turpi causa non oritur actio,*" applies with full force.   No court will lend its aid to a party who founds his claim for redress upon an illegal act.

The Brazilian government was justified by the law of nations in demanding. the return of the captured vessel and proper redress otherwise.   It was due to its own character, and to the neutral position it had assumed between the belligerents in the war then in progress, to take prompt and vigorous measures in the case, as was done.   The commander was condemned by the law of nations, public policy, and the ethics involved in his conduct.

*Decree affirmed.*