101 U.S. 37 (____)
THE "FLORIDA."
Supreme Court of United States.

*38 The case was argued by Mr. Benjamin F. Butler and Mr. Frank W. Hackett for the appellant.
The Solicitor-General, contra.
*41 MR. JUSTICE SWAYNE, after stating the facts, delivered the opinion of the court.
The legal principles applicable to the facts disclosed in the *42 record are well settled in the law of nations, and in English and American jurisprudence. Extended remarks upon the subject are, therefore, unnecessary. See Grotius, De Jure Belli, b. 3, c. 4, sect. 8; Bynkershoek, 61, c. 8; Burlamaqui, vol. ii. pt. 4, c. 5, sect. 19; Vattel, b. 3, c. 7, sect. 132; Dana's Wheaton, sect. 429 and note 208; 3 Rob. Ad. Rep. 373; 5 id. 21; The Anne, 3 Wheat. 435; La Amistad de Rues, 5 id. 385; The Santissima Trinidad, 7 id. 283, 496; The Sir William Peel, 5 Wall. 517; The Adela, 6 id. 266; 1 Kent, Com. (last ed.), pp. 112, 117, 121.
Grotius, speaking of enemies in war, says: "But that we may not kill or hurt them in a neutral country, proceeds not from any privileges attached to their persons, but from the right of the prince in whose dominions they are."
A capture in neutral waters is valid as between belligerents. Neither a belligerent owner nor an individual enemy owner can be heard to complain. But the neutral sovereign whose territory has been violated may interpose and demand reparation, and is entitled to have the captured property restored.
The latter was not done in this case because the captured vessel had been sunk and lost. It was, therefore, impossible.
The libellant was not entitled to a decree in his favor, for several reasons.
The title to captured property always vests primarily in the government of the captors. The rights of individuals, where such rights exist, are the results of local law or regulations. Here, the capture was promptly disavowed by the United States. They, therefore, never had any title.
The case is one in which the judicial is bound to follow the action of the political department of the government, and is concluded by it. Phillips v. Payne, 92 U.S. 130.
These things must necessarily be so, otherwise the anomaly would be possible, that, while the government was apologizing and making reparation to avoid a foreign war, the offending officer might, through the action of its courts, fill his pockets with the fruits of the offence out of which the controversy arose. When the capture was disavowed by our government, it became for all the purposes of this case as if it had not occurred.
*43 Lastly, the maxim, "ex turpi causa non oritur actio," applies with full force. No court will lend its aid to a party who founds his claim for redress upon an illegal act.
The Brazilian government was justified by the law of nations in demanding the return of the captured vessel and proper redress otherwise. It was due to its own character, and to the neutral position it had assumed between the belligerents in the war then in progress, to take prompt and vigorous measures in the case, as was done. The commander was condemned by the law of nations, public policy, and the ethics involved in his conduct.
Decree affirmed.