GIBSON v. ANDERSON.

(Circuit Court of Appeals, Ninth Circuit. May 3, 1904.)

1. PUBLIC LANDS—INDIAN RESERVATION—AUTHORITY OF PRESIDENT.

The President of the United States, by proclamation, has power to reserve a portion of the unoccupied public lands of the United States for an Indian reservation, notwithstanding Rev. St. § 2319 [U. S. Comp. St. 1901, p. 1424], declaring all mineral deposits in the public lands of the United States and the lands containing the same open to exploration and purchase.

2. SAME—MINERAL LANDS—ENTRY.

Where complainant made certain mining locations on an Indian reservation on May 27, 1902, on which day an act of Congress subjecting mineral lands in the reservation to mineral entry was passed (Act May 27, 1902, c. 888, 32 Stat. 245), but on the same day two joint resolutions (32 Stat. pt. 1, 742, 744) were passed postponing the operation of the act until December 31, 1902, such joint resolutions suspended complainant's right to locate mineral claims on the land under such act.

3. SAME—STATUTES—ENACTMENT—PUBLISHED RECORD—IMPEACHMENT.

Where the published record of joint resolutions of Congress, duly authenticated, showed that the resolutions were approved by the President on May 27, 1902, such record could not be impeached by proof showing that they were not in fact approved until a later date.

Appeal from the Circuit Court of the United States for the Eastern Division of the District of Washington.

The appellant, M. F. Gibson, was the complainant in a suit in equity brought to enjoin A. M. Anderson, the appellee, who is the Indian agent in charge of the Spokane Indian reservation in Stevens county, in the state of Washington, from interfering with certain mining locations situate within the Indian reservation, and located on May 27, 1902. The bill alleges that the locations were made in due compliance with the laws of Congress and the statutes of the state of Washington, but that the appellee claims and maintains that the land whereon they are located was created an Indian reservation by virtue of

an executive order of the President of the United States made on January 18, 1881, ordering that the said land be, "and the same is hereby, set aside and reserved for the use and occupation of the Spokane Indians." The bill alleges: That the executive order does not have the effect, as claimed by the appellee, to withdraw the mineral lands within the territory therein described from mineral locations, but that the same remained subject to the provisions of and locations under section 2319 of the Revised Statutes, and that if, by said executive order, any such rights as are contended for by the appellee were established, the same were surrendered by virtue of a treaty stipulation entered into between the United States and the Spokane Indians on March 18, 1887, and ratified by Congress on July 13, 1892, whereby the said Indians, in consideration of the sum of $95,000, agreed to remove to the Coeur d'Alene reservation, there to take allotments in severalty. That, after the making of said treaty and the ratification of the same, the further and continued occupancy of said territory by the Spokane Indians was merely as tenants or occupants at sufferance or at will. That afterwards, in May, 1902, Congress passed an act entitled "An act making appropriations for the current and contingent expenses of the Indian Department and for fulfilling treaty stipulations with various Indian tribes for the fiscal year ending June 30, 1903, and for other purposes" (Act May 27, 1902, c. 888, 32 Stat. 245), which act was signed by the President of the United States, and on May 27, 1902, became a law. That said act contains the following provision: "That the mineral lands only in the Spokane Indian reservation in the state of Washington shall be subject to entry under the laws of the United States in relation to the entry of mineral lands: provided, that lands allotted to the Indians, or used by the government for any purpose, or by any school, shall not be subject to entry under this provision." That subsequently Congress passed joint resolution No. 24 (32 Stat. pt. 1, 742), fixing July 1, 1902, as the time when said act should take effect, except as otherwise specially provided therein, and passed also joint resolution No. 25 (32 Stat. pt. 1, 742), fixing December 31, 1902, as the time when that provision in said act which relates to the subjecting to entry under the mining laws of the United States lands in said Indian reservation, should take effect and be operative, and passed also Joint Resolution No. 31 (32 Stat. pt. 1, 744), which contains the following provision: "The Secretary of the Interior is directed to make allotments in severalty to the Indians of the Spokane Indian reservation in the state of Washington, and upon the completion of such allotments, the President shall by proclamation give public notice thereof, whereupon the lands in said reservation not allotted to Indians, or used and reserved by the government or occupied for school purposes, shall be opened to exploration, location, occupation and purchase under the mining laws." That said last-mentioned resolution purports to have been approved on June 19, 1902. That while joint resolutions 24 and 25 purport to have been approved on May 27, 1902, they were not, nor was either of them, actually approved by the President of the United States until after June 1, 1902. That said mining locations were made upon information received from Washington, D. C., immediately following the approval of said act of May 27, 1902. The bill proceeds to set forth the acts and threats of the Indian commissioner hostile to the appellant's possession of said mining claims, and as to which injunctive relief is sought. The appellee interposed a general demurrer to the bill for want of equity. The court sustained the demurrer, and thereupon rendered a decree dismissing the bill. From that decree the appeal is taken.

H. N. Martin and Happy & Hindman, for appellant.
Jesse A. Frye and Edward E. Cushman, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

To show that there was equity in the bill, the appellant advances the proposition that the act of Congress embodied in section 2319 of

the Revised Statutes [U. S. Comp. St. 1901, p. 1424], declaring all mineral deposits in the public lands of the United States open to exploration and purchase, and the lands containing the same to occupation and purchase, cannot be repealed or suspended by a proclamation of the President. But there is no question here of repealing or suspending the operation of an act of Congress. The question is whether the President could, by proclamation, reserve a portion of the unoccupied public lands of the United States for an Indian reservation. In McFadden v. Mountain View Mining & Milling Company, 97 Fed. 670, 38 C. C. A. 354, this court said:

"There can be no doubt of the power of the President to reserve those lands of the United States for the use of the Indians. The effect of that executive order was the same as would have been a treaty with the Indians for the same purpose, and was to exclude all intrusion upon the territory thus reserved by any and every person other than the Indians for whose benefit the reservation was made for mining as well as other purposes."

The appellant seeks to distinguish that case from the case at bar by referring to the fact that the proclamation setting aside the Collville reservation, which was under consideration in that case, was made before the enactment of section 2319 of the Revised Statutes. But, if the President had the power to set aside a portion of the public domain for an Indian reservation, it is clear that the power was not abridged by the enactment of that statute. Congress did not thereby dispose of any estate in the public lands, or create any burden thereon, or establish any right therein until the actual inception and assertion of mining rights thereunder. Statutory license to locate mining claims has never been held, prior to the acquisition of a vested right, to be an obstacle to either the disposition or the reservation of the public lands. We entertain no doubt of the correctness of our ruling in the McFadden Case. The power of the President to create a reservation of public lands for the use and benefit of the Indians and for other purposes has been recognized both by Congress and by the courts—by Congress in enacting subsequent appropriation acts, appropriating money therefor, or other acts, as in this particular case by the act of May 27, 1902, and by the joint resolution No. 24 (32 Stat. pt. 1, 245–277), and joint resolutions Nos. 25 and 31 (32 Stat. pt. 1, 742, 744). In Grisar v. McDowell, 6 Wall. 363, 18 L. Ed. 863, the court, referring to the power of the President to reserve from sale and set apart for public uses portions of the public domain, said: "The authority of the President in this respect is recognized in numerous acts of Congress. Thus, in the pre-emption act of May 29, 1830, it is provided that the right of pre-emption contemplated by the act shall not 'extend to any land which is reserved from sale by act of Congress, or by order of the President, or which may have been appropriated for any purpose whatever;'" and the court alluded to other acts in which Congress had recognized reservations made by the proclamation of the President or by the authority of the President or officers acting under his direction. The same was held of an Indian reservation created by executive order in United States v. Leathers, 6 Sawy. 17, Fed. Cas. No. 15,581, United States v. Sturgeon, 6 Sawy. 29, Fed. Cas. No. 16,412, and United States v. Payne

(D. C.) 8 Fed. 883. There can be no doubt that such a reservation by proclamation of the executive stands upon the same plane as a reservation made by treaty or by act of Congress. In Bardon v. Northern Pacific Railroad, 145 U. S. 535–543, 12 Sup. Ct. 856, 36 L. Ed. 806, the Supreme Court affirmed the doctrine expressed in Wilcox v. Jackson, 13 Pet. 498, 10 L. Ed. 264, that land once legally appropriated to any purpose was thereby severed from the public domain; and the ruling in Leavenworth & Galveston Railroad v. United States, 92 U. S. 733, 23 L. Ed. 634, in which it was said of the Indians' right of occupancy that the legislation which reserved it for any purpose excluded it from disposal as the public lands are usually disposed of, and in which the court said: "For all practical purposes they owned it; as the actual right of possession, the only thing they deemed of value, was secured to them by treaty until they should elect to surrender it to the United States." The treaty stipulation with the Spokane Indians of March 18, 1887, referred to in the complaint, did not relate to that portion of the reservation occupied by the Lower Band of the Spokane Indians which was reserved by the proclamation of January 18, 1881. The appellant, in his bill, makes no claim to have acquired a right in these lands prior to the time when they were so reserved; on the contrary, he alleges that his mining locations were made on May 27, 1902, the day on which the act of Congress was approved subjecting the mineral lands in the reservation to entry under the laws of the United States in relation to the entry of mineral lands, and after the information had come to him that the act had been so approved. But it appears also from the bill that by joint resolution 24 it was enacted that the aforesaid act should take effect, except as otherwise provided, from and after July 1, 1902, and that by joint resolution 25 the time when it should take effect and be operative was postponed until December 31, 1902. Both of these joint resolutions purport to have been approved on May 27, 1902, and, if so, they had the effect to suspend all rights to locate mineral claims granted by the act approved on that date.

But the appellant contends, and so alleges in his bill, that while it appears from the published statutes of the United States that the joint resolutions were approved by the President on May 27, 1902, they were not in fact approved until after June 1, 1902, and therefore after his locations were made, and he urges that this allegation of the bill presents an issue of fact to be determined by evidence. But the published record of the joint resolutions and their approval is unimpeachable. The appellant cannot go behind the authenticated published statutes of the United States, and show that an act which purports to have been approved on a certain date was in fact approved on a different date. Said Mr. Justice Harlan in Field v. Clark, 143 U. S. 649–672, 12 Sup. Ct. 495, 36 L. Ed. 294: "When a bill thus attested receives his approval, and is deposited in the public archives, its authentication as a bill that has passed Congress should be deemed complete and unimpeachable." See, also, Harwood v. Wentworth, 162 U. S. 547, 16 Sup. Ct. 890, 40 L. Ed. 1069. The appellant cites authorities such as Burgess v. Salmon, 97 U. S. 384, 24 L. Ed. 1104, and Louisville v. Savings Bank, 104 U. S. 469, 26

L. Ed. 775, to the effect that, where it need and can be done, the very hour when a bill became a law may be shown; but that is a proposition not involved in the present inquiry. Here the offer of the appellant is not to show the precise time at which on May 27, 1902, the act and the joint resolutions were relatively approved, but to contradict the published record of the statute, and to show that the joint resolutions were not in fact approved on the day on which they purport to have been approved, but on a later date, and to deduce therefrom the conclusion that, the locations having been made on the 27th, and after the receipt of the news of the approval of the act, they must consequently necessarily have been made before the approval of the joint resolutions. There is no averment that the mining locations were made in an interval of time between the approval of the act and the approval of the joint resolutions, if the latter were, as we must assume they were, approved on May 27th. The assertion of the validity of the locations rests wholly on the allegation that the joint resolutions were not approved on that day, but at a later date.

In view of these considerations it is apparent that the circuit court did not err in holding that there was no equity in the bill, and it becomes unnecessary to consider the further contention of the appellant that Congress could not, by joint resolutions 24, 25, and 31, deprive him of vested rights.

The decree will be affirmed.