**Larkin T. HEFLIN, III, Plaintiff,**

v.

**TOWN OF WARRENTON,
et al., Defendants.**

**Civil Action No. 96–305–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 4, 1996.

Ann M. Callaway, Ann M. Callaway, P.C., Warrenton, VA, for Plaintiff.

J. Ross Newell, III, Timberlake, Smith, Thomas & Moses, P.C., Staunton, VA, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

This case presents the question whether plaintiff's conviction for the criminal act that triggered his arrest should bar his § 1983 suit for the excessive force that he claims was used in effecting his arrest. In perhaps more familiar terms, the question presented is whether the so-called "illegal act defense" is a bar to a § 1983 suit alleging police use of unconstitutionally excessive force in making an arrest.

## I[1]

On the evening of September 30, 1991, plaintiff, Larkin T. Heflin, III, his wife, children, and a few family friends gathered to watch the Washington Redskins–Dallas Cowboys football game on television at his townhouse in Warrenton, Virginia. After the game, two of Heflin's guests, siblings Corey and Corby Moreland, came to blows over a woman in the parking lot. Two other guests, Gilbert Lee Arbogast and Ercil Arbogast, intervened and eventually stopped the fight. Before departing with his family from Heflin's residence, however, Corby Moreland deliberately broke a window on his brother's automobile.

Later, shortly after midnight, defendants, Officers Thomas C. Yancey and R.E. Fontaine of the Town of Warrenton Police Department, arrived at the scene in response to a telephone complaint of assault and battery. Officers Yancey and Fontaine immediately encountered Corey Moreland, who was outside at the time inspecting his vehicle's shattered window. Without any inquiry, Officers Yancey and Fontaine arrested and handcuffed Corey Moreland and placed him in one of their two squad cars. Then, as they approached Heflin's front door, Officers Yancey and Fontaine noticed Gilbert Lee Arbogast, who was also outdoors. They arrested Arbogast and placed him in the second squad car.

Hearing the ensuing commotion, Heflin, his wife, and Ercil Arbogast went to the front door of the townhouse to investigate. On seeing the two officers, Ercil Arbogast ran to the bathroom and locked the door. Officers Yancey and Fontaine informed the Heflins that they were searching for Arbogast and then entered the townhouse, ignoring Heflin's demand for the production of an appropriate warrant and his refusal to consent to the officer's entry. Once inside, the officers proceeded to search the Heflins' residence and even inspected the bedrooms of Heflin's sleeping children. When they came to the bathroom door, Denise Heflin, Arbogast's girlfriend, blocked their path. Yet, the officers were not deterred; they arrested and handcuffed her and then proceeded to take her outside despite her cries of protest. Arbogast, hearing her scream in protest, exited the bathroom, ran down the hallway and through the front door. At that point, he stumbled into the officers' not-so-warm embrace and was taken into custody.

Heflin watched from his front door as the officers attempted to restrain Arbogast by the use of force, including striking him with their night-sticks. On seeing this, Heflin pleaded with the officers to stop striking Arbogast, assuring them that Arbogast would surrender peacefully. Officer Yancey warned Heflin to "go back inside or [that he'd be] next." Heflin complied with this order and retreated into his kitchen. Subsequently, Officer Yancey entered the kitchen, ordered Heflin to place his hands on the counter, and began to read him his *Miranda*

1. Although defendants filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Fed.R.Civ.P., they also invited the Court to consider facts outside the four corners of the complaint. Thus, their motion must be treated as one for summary judgment under Rule 56, Fed.R.Civ.P. Accordingly, plaintiff's version of contested facts must, for purposes of this motion, be accepted. *Donmar Ents., Inc. v. Southern Nat'l Bank of N.C.*, 64 F.3d 944, 946 (4th Cir. 1995).

rights. Although Heflin asked why he was being placed under arrest, Officer Yancey ignored his query and commanded him to place his hands behind his head. Officer Yancey then handcuffed Heflin and removed him from the residence. As they climbed the outside stairs, Heflin, who had undergone hip replacement surgery that made him unsteady on his feet, stumbled and lost his balance. Officer Yancey refused to wait for Heflin to regain his footing, and proceeded to drag Heflin, by the handcuffs, up the concrete steps to the parking lot. In the course of this, Heflin suffered abrasions to his stomach and face, for which he subsequently sought medical treatment.

At the station, the officers charged Heflin with obstruction of justice for impeding efforts to arrest Ercil Arbogast. Eventually, Heflin was found guilty of that crime, a Class 3 misdemeanor under Virginia Code § 18.2–460 (1950), as amended.

On September 30, 1993, Heflin filed a § 1983 action in the Circuit Court of Fauquier County against the Town of Warrenton, the Town of Warrenton Police Department, Officer Yancey, and Officer Fontaine, alleging that defendants had violated his rights under the Fourth and Fourteenth Amendments by using excessive force during his arrest. Heflin never properly served process on Officer Fontaine in the state action, and the state court dismissed the Town of Warrenton Police Department by Order dated

April 25, 1995. Subsequently, the remaining two defendants filed a motion for summary judgment, contending that Heflin's wrongful act of obstructing justice barred his civil claim. On July 10, 1995, the state court denied this motion on the ground that it could not definitively determine whether Heflin's wrongful act was "inextricably linked" to the events giving rise to his cause of action. Heflin's case remains pending in the Circuit County of Fauquier County.

Meanwhile, on March 7, 1996, Heflin filed this matter in federal court. It alleges the same cause of action as that alleged in the state suit[2] and, here, as there, Officer Yancey and the Town of Warrenton move for summary judgment on the basis that Heflin's wrongful act bars his § 1983 claim. Following oral argument, the Court, ruling from the bench, denied defendants' motion to dismiss or, in the alternative, for summary judgment. This memorandum opinion further elaborates the reasons for this ruling.

**II**

Defendants' anchor their position to the general rule, in Virginia and elsewhere, that "no Court will lend its aid to a party who founds his claim for redress upon an illegal act." *The Florida,* 101 U.S. 37, 43, 25 L.Ed. 898 (1879). This rule is the so-called "illegal act defense," for which defendants cite a legion of state and federal authority.[3] Yet, this avalanche of case law is of no avail to

---

**2.** In the federal action, Heflin elected not to sue the Town of Warrenton Police Department. But in all other respects, the two actions are the same; Heflin has again sued the Town of Warrenton, Officer Yancey, and Officer Fontaine for damages for excessive force under § 1983, and he has again failed to obtain service on Officer Fontaine.

**3.** Among the federal cases aside from *The Florida* cited by defendants, see, *Dudley v. Stoneman,* 653 F.2d 125, 126 (4th Cir.1981) (dismissing a fired state investigator's equal protection claim brought pursuant to § 1983 due to "his participation in [the] immoral or unlawful act" that gave rise to his purported injury); *Suddarth v. Slane,* 539 F.Supp. 612, 616 (W.D.Va.1982) (denying § 1983 relief for a former Virginia State Trooper because "he admits that the conduct he engaged in from which his alleged injuries now arise was in violation of Virginia law and Department regulations."); *Hill v. Nicodemus,* 755

F.Supp. 692 (W.D.Va.1991) (rejecting an estate administrator's wrongful death suit on the ground that the decedent, a pretrial detainee who committed suicide, "willful[ly] participat[ed] in an immoral or illegal act" by taking her own life), aff'd, 979 F.2d 987 (4th Cir.1992); *Carter v. Shires,* Civil Action No. 92–942–R, (W.D.Va. 1994) (finding that plaintiff's decedent's participation in an armed robbery prohibited his recovery for wrongful death). Among Virginia cases that defendants cite, see, *Miller v. Bennett,* 190 Va. 162, 165, 56 S.E.2d 217 (1949) (prohibiting an estate administrator's recovery for wrongful death against abortionist when "the deceased committed moral turpitude" by consenting to the then-illegal procedure that resulted in her untimely passing); *Zysk v. Zysk,* 239 Va. 32, 35, 404 S.E.2d 721 (1990) (barring plaintiff's tort claim against her husband for infecting her with herpes before their marriage because she had "voluntarily" engaged in the crime of fornication).

defendants for the "illegal act defense" has no application in the instant circumstances. Indeed, to apply this defense here would contravene settled Fourth Amendment and related § 1983 jurisprudence that guarantees to everyone freedom from the use of "objectively unreasonable" force by police in effecting arrests regardless of whether the person arrested committed any criminal acts. *See, e.g., Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *see also Rowland v. Perry,* 41 F.3d 167 (4th Cir. 1994); *Taft v. Vines,* 70 F.3d 304 (4th Cir. 1995), *modified,* 83 F.3d 681 (4th Cir.1996). This settled authority makes clear that the constitution permits law enforcement agents to use only objectively reasonable force in making an arrest. The use of any greater force is unconstitutionally excessive and gives rise to a § 1983 claim for damages and, if appropriate, injunctive relief. To be sure, the severity of the crime committed by the person being arrested is a factor to be assessed in measuring the reasonableness of the forced used in effecting the arrest. But this is only one of several factors to be assessed;[4] it can never, by itself, bar a § 1983 suit alleging unreasonable force. Put more succinctly, the "illegal act defense" is inapplicable in § 1983 excessive force suits. To hold otherwise, as defendants here urge, would effectively license law enforcement agents to use objectively unreasonable force to make arrests whenever the person being arrested committed the crime precipitating the arrest. Such an obnoxious result is flatly prohibited by the constitution.

Nor are any of the "illegal act defense" cases cited by defendants to the contrary. None of those cases involves a § 1983 excessive force claim.[5] Instead, they all involve plaintiffs who seek to recover damages flowing from wrongful actions in which they themselves voluntarily engaged.[6] *Miller,* 190 Va. at 164–65, 56 S.E.2d 217 ("The general rule, that a party who consents to or participates in an immoral or illegal act cannot recover damages from other participants for the consequences of that act, is well settled."). Here, Heflin did not willingly participate in the officers' purported act of excessive force. That his criminal behavior—obstruction of justice—led to the arrest is not dispositive; it is but one of the factors to be assessed under *Graham.*

Defendants place special reliance on *Dudley v. Stoneman,* 653 F.2d 125 (4th Cir.1981) (*per curiam* ). This reliance is misplaced. In that case, plaintiff, a former investigator for the Virginia Alcohol Beverage Control Commission, sought to recover against a supervisor for wrongful termination. The rec-

---

4. In this circuit, whether the force used in effecting an arrest was objectively unreasonable is determined by reference to three factors: (1) the severity of the underlying crime; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resisted arrest by flight. *Rowland,* 41 F.3d at 173 (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871–72).

5. Indeed, most of defendants' cases were not § 1983 claims of any kind. *See The Florida,* 101 U.S. 37, 25 L.Ed. 898 (1879); *Hill v. Nicodemus,* 755 F.Supp. 692 (1991); *Miller v. Bennett,* 190 Va. 162, 56 S.E.2d 217 (1949); *Zysk v. Zysk,* 239 Va. 32, 404 S.E.2d 721 (1990).

6. In all but two of the cases defendants cite, the plaintiff voluntarily participated in the wrongful conduct that was the basis of the claim. Thus, in *The Florida,* plaintiff brought a civil suit seeking title to a vessel that he had illegally captured during the Civil War. *The Florida,* 101 U.S. 37, 25 L.Ed. 898 (1879). In *Miller,* a woman's estate brought a wrongful death claim against the abortionist who had performed an abortion on the decedent, who, in turn, had consented to the then-illegal procedure. *Miller v. Bennett,* 190 Va. 162, 56 S.E.2d 217 (1949). In *Zysk,* plaintiff freely participated in the illegal act of premarital sex that caused her to contract a sexually transmitted disease. *Zysk v. Zysk,* 239 Va. 32, 404 S.E.2d 721 (1990). And in *Hill,* the decedent's estate sought damages for the decedent's act of suicide while in custody. *Hill v. Nicodemus,* 755 F.Supp. 692 (W.D.Va.1991).

*Carter* and *Suddarth,* the two exceptions, are of no benefit to defendants here. Plaintiff in *Suddarth* was a former Virginia State Trooper who had been terminated for committing adultery. His § 1983 suit alleged that his termination violated the Fourteenth Amendment's Equal Protection Clause because other officers had not been fired for committing the same offense. *Suddarth v. Slane,* 539 F.Supp. 612 (W.D.Va.1982). Plaintiffs in *Carter* sought to recover for the allegedly wrongful shooting of the decedent during an armed robbery. The *Carter* court applied the "illegal act defense" to plaintiffs' state law wrongful death claim, not to their § 1983 claim. *Carter v. Shires,* Civil Action No. 92–942–R, (W.D.Va.1994).

ord showed that defendant encouraged plaintiff to falsify an incident report and then discharged plaintiff for doing it. Plaintiff's § 1983 suit alleged that his termination violated the Equal Protection Clause of the Fourteenth Amendment because a co-worker who had also falsified a report with respect to the same incident only received a suspension. The Fourth Circuit affirmed the district court's dismissal of plaintiff's § 1983 suit on the ground of the "illegal act defense." But *Dudley* is plainly inapposite to the case at bar; it is not a Fourth Amendment excessive force case. Moreover, in sharp contrast to this case, the plaintiff in *Dudley* voluntarily engaged in the wrongful conduct on which the § 1983 claim was based. Indeed, the *Dudley* panel focused distinctly on that plaintiff's participation in the illegal conduct, stating that "because Dudley was admittedly *in pari delicto* with Stoneman, he may not recover under § 1983." *Id.* at 126. Thus, like the other "illegal act defense" cases cited by defendants, *Dudley* merely stands for the proposition that plaintiffs should not be permitted to profit from the very activities in which they engaged.

For the forgoing reasons, defendants' reliance on the "illegal act defense" fails. Accordingly, the motion to dismiss or, in the alternative, for summary judgment must be denied.

An appropriate Order has issued.