# Richmond

## Iva Rodeffer Davis Coffman v. Commonwealth of Virginia.

November 22, 1948.

Record No. 3452.

Present, All the Justices.

*Francis S. Miller* and *Paxson, Williams & Fife,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Henry T. Wickham, Special Assistant to the Attorney General,* for the Commonwealth.

Buchanan, J., delivered the opinion of the court.

At the April term, 1947, an indictment was returned in the Circuit Court of Rockingham county charging that the defendant, Iva Rodeffer Davis Coffman, on or about the 28th of January, 1947, "unlawfully, feloniously and wilfully did use and employ in and upon the body of one Kerneda Bennett, a female person then and there pregnant with child, a certan instrument, the name and character of which is to said grand jurors unknown, with intent then and there to destroy the said unborn child of the said Kerneda Bennett and to produce an abortion or miscarriage, and then, there and thereby did unlawfully, feloniously and wilfully destroy such unborn child and produce such abortion or miscarriage, * * *."

This indictment was made under section 4401 of the Code (Michie, 1942), which provides, so far as is pertinent here, as follows:

"If any person administer to, or cause to be taken by a woman, any drug or other thing, or use any means with intent to destroy her unborn child, or to produce abortion or miscarriage, and thereby destroy such child or produce such abortion or miscarriage, he shall be confined in the penitentiary not less than three nor more than ten years. * * *"

There was a trial by jury, which returned this verdict: "We, the jury, find the accused, Iva Rodeffer Davis Coffman, guilty of attempting to produce an abortion or to destroy the unborn child of Kerneda Bennett as charged in the indictment, and fix her punishment by confinement in the Penitentiary for a period of five years."

The defendant was sentenced in accordance with that verdict and she now contends that the court committed these errors in the trial: In refusing to compel the Commonwealth to elect whether to prosecute for the substantive crime of abortion or for an attempt only; in refusing to strike the evidence relating to the substantive offense; in giving Instruction No. 1 for the Commonwealth, and in refusing

to set aside the verdict and award the defendant a new trial.

It was conceded in the oral argument that the evidence was sufficient to support a conviction for an attempt, of which the jury found the defendant guilty, but it is argued that the defendant did not have a fair trial because while the evidence shows there was no abortion in fact, yet the issue of abortion was submitted to the jury on the theory that defendant caused the death of the mother and thereby caused the death of the child, resulting in the admission of irrelevant testimony prejudicial to defendant.

The case made by the evidence for the Commonwealth was this: Kerneda Bennett, a young woman living with her husband in Harrisonburg, was pregnant by someone other than her husband. To get rid of the child she enlisted the aid of a friend, Mrs. Irene Davis. Mrs. Davis called the defendant, Mrs. Coffman, and asked her if she could see Mrs. Bennett and help her out of some trouble she was in. Together they visited Mrs. Coffman at her home in Mt. Crawford, near Harrisonburg. On that occasion Mrs. Coffman and Mrs. Bennett went into a bedroom of Mrs. Coffman's home, leaving Mrs. Davis in the living room. When they came out Mrs. Coffman told Mrs. Bennett to come back if nothing had happened in fourteen days, and if anything was said about why they were there to say they came to have a dress made.

About two weeks later, on January 27, Mrs. Bennet, who had not had the result she expected from the first visit, asked Mrs. Davis to make another appointment with Mrs. Coffman, which Mrs. Davis did. The next night, January 28, at about seven-thirty o'clock, Mrs. Davis and Mrs. Bennett drove to the home of Mrs. Coffman in a taxicab. On arrival Mrs. Coffman said if they had a taxicab waiting they had better get it over with pretty soon. Mrs. Coffman and Mrs. Bennett thereupon went into the bedroom, leaving Mrs. Davis in the living room. In about fifteen or twenty minutes Mrs. Davis thought she heard something fall, followed by some moving around. Then in a couple

of minutes Mrs. Coffman came out and said, "Come in here. This woman has fainted." Mrs. Davis found Mrs. Bennett lying face down on the floor beside the bed with her head near the foot. She was dressed, except her shoes were off and her coat was across the foot of the bed. Mrs. Bennett was then groaning. Mrs. Coffman seemed very nervous. Mrs. Davis suggested that Mrs. Coffman call her husband, but Mrs. Coffman said, "No, get her to a hospital." Mrs. Davis then called the cab driver, who carried Mrs. Bennett out and put her into the cab. Mrs. Coffman then said, "You all have been to Mt. Sidney and not to Mt. Crawford." There was little sign of life then in Mrs. Bennett and when they arrived at the hospital she was dead. She had apparently been in good health up to this night.

Later that night the home of Mrs. Coffman was searched, but nothing of evidential value was found. Mrs. Coffman told the deputy sheriff that Mrs. Bennett asked to go to the bathroom, and was shown into the bedroom; that she then said she was not feeling well and asked for a cup of water; that when this was brought Mrs. Bennett took two pills out of her pocketbook, swallowed them and jokingly said they were poison; that a few minutes later she fell off the stool onto the floor. Mrs. Coffman first denied having seen Mrs. Bennett before, but later admitted she had been there two weeks before. In Mrs. Bennett's handbag was later found a small box with some white pills in it, labeled as a prescription with directions to take one three times a day after meals.

A week or more after Mrs. Bennett's death, Mrs. Coffman came to see Mrs. Davis at her home one night, inquired whether Mrs. Davis had made a statement to the Commonwealth's attorney, and offered to pay all lawyer's fees if Mrs. Davis "would stick with her."

Dr. Byers, coroner of the city of Harrisonburg and of Rockingham county, was called and he reached the hospital about 8:20 p. m. He and Dr. Hill, a physician and surgeon in the city, performed an autopsy. They found no evidence of external injuries except a minute scratch on the perineum;

there was a piece of tissue from the placenta in the cervix; there was one very small blood clot in the vagina; there was no blood in the abdominal cavity; there was a pregnant uterus ·in normal position and appearing normal; there was no injury to the uterine wall. On taking the uterus out it had a feeling of air in the cavity. On opening the uterus they found a pregancy in it intact of between three and four months development. The heart, lungs, stomach and uterus were removed and sent to the Department of Pathology, University of Virginia, for microscopic study. The report from there did not indicate any finding as to the cause of Mrs. Bennett's death.

Dr. Byers gave it as his opinion from his examination and findings that an abortion had been attempted on Mrs. Bennett and that she had died as a result of air embolism. He said that the death of the fetus was caused by lack of blood; that when the mother's blood stopped the baby died; that is, the baby died when the mother died. "I felt that the fetus died as a result of the death of the mother;" that the death of the mother came from an air embolism, and that the air embolism "came from the attempted abortion."

Dr. Hill testified that from their observation and findings "the only possible cause of death that we could arrive at was air embolism. * * * As I say, the only thing that we found was crepitation in the pregnant uterus which was caused, or is caused, or can only be caused by air entering under force from the outside." He testified that the injection of air into the uterus is used in attempting to produce abortion.

At the conclusion of the testimony of Mrs. Bennett's husband and the taxicab driver, before Mrs. Davis had testified and before any medical evidence had been introduced by the Commonwealth, on motion of the defendant, Dr. James R. Cash, professor of pathology at the University of Virginia, testified as a witness for the defendant.

Dr. Cash testified that the heart, lungs, uterus with fetus attached, and stomach, sent to his department, had been examined by him. He testified in detail as to the result

of his examination and stated that they could not find any evidence that an abortion had been attempted; that there was no evidence of any injury to any of these organs and that examination of the stomach did not give a reliable result because it had been fixed in formaldehyde. He said they had no material from which they could find the cause of death; that there was no explanation of the cause of death within the organs they examined. He said that if air enters the blood stream it forms an air embolus; that to produce death an air embolism must affect the heart, brain or lungs; that the only time to determine whether that has happened is at the autopsy, before the organs have been removed from the body; that in order for air in the uterus to do any damage it must go into the veins and there would have to be some break in the veins to let it in; that from his examination of the uterus in this case "it is not seen that air embolism was possible. There is no evidence that it could have taken place." He added, "I'd like to make it perfectly clear that we can't say that this case was not caused by air embolism. She may have died of air embolism, but we have no evidence to that effect."

He further testified, on cross-examination, that attempted abortion by injection of air into the uterus is, perhaps, the most common cause of air embolism, but he did not think it had happened in this case because they studied the entire lining of the uterus and that air could not have gone in unless the wall had been injured, and there was no injury to the lining.

It is the contention of the defendant, as stated, that the admission of all this testimony as to the details of the cause and circumstances of death was prejudicial to her and not warranted by the statute or the indictment; that she was indicted for abortion under section 4401 and was actually tried for murder, notwithstanding another indictment against her for the murder of Mrs. Bennett was pending.

This contention fails for two reasons. First, because the testimony of Dr. Cash, introduced as it was by the defendant before the Commonwealth offered any evidence

as to the cause of death, entitled the Commonwealth to respond with evidence on the same subject.

Second, the admission of that testimony, and the refusal of the court to require an election as between the substantive crime and the attempt, as well as the refusal of the court to strike the evidence relating to the substantive offense charged, were warranted under the statute and the indictment.

Conviction for an attempt to commit a felony on an indictment charging the felony is expressly authorized by statute. Code (Michie, 1942), section 4922.

■ Abortion is defined as "the expulsion of the fetus at so early a period of uterogestation that it has not acquired the power of sustaining an independent life." Although there may be a technical distinction recognized in medicine between abortion and miscarriage, the words are usually synonymous in law. 1 Am. Jur., Abortion, section 2, p. 133; *Abrams* v. *Foshee*, 3 Iowa 274, 66 Am. Dec. 77, and note; 1 C. J. S., Abortion, section 1, p. 312; *Commonwealth* v. *Smith*, 213 Mass. 563, 100 N. E. 1010.

It is admitted there was no expulsion of the fetus in this case, but the evidence of the Commonwealth is that its destruction was caused by the death of the mother.

It is to be noted that the statute, section 4401, quoted above, provides that if any person use any means with intent to destroy a woman's unborn child *or* to produce an abortion, and thereby destroy such child *or* produce such abortion, he shall be punished, etc.

The statute appeared in Acts 1847-8, ch. 3, section 9, p. 96, where the punishment was determined by whether death resulted to a quick child or one not quick. It was carried into the Code of 1873, ch. 187, section 8, without that distinction, and into Code, 1887, section 3670, in practically its present form. It has not been construed by this court with respect to the present point. We have not been referred to a case from another jurisdiction construing a similar statute, nor have we found one.

■ In any event, where a crime is defined by statute

the decisions of other courts whose statutes are different cannot control, and the legislative intent as expressed in the statute of the forum furnishes the only rule and guide. 1 C. J. S., Abortion, section 2, p. 313.

Section 4401 forbids the use of any means with intent to destroy an unborn child or to produce an abortion. The rule of *ejusdem generis* does not apply and the prohibition is all-inclusive against any means. 1 C. J. S., Abortion, section 5, pp. 316-7. The intent with which the means are used is the controlling factor. It seems clear from the language of the statute that more than one intended consequence is included. If only the intent to cause an abortion, in the sense of expulsion of the fetus, and the causing of such abortion, were meant to be covered, the words "intent to destroy her unborn child," and "thereby destroy such child," would be useless. It is not to be presumed that those words were used for no purpose and mean nothing in the statute. *Raven Red Ash Coal Corp.* v. *Absher*, 153 Va. 332, 149 S. E. 541.

In *Tonnahill* v. *State*, 84 Tex. Cr. 517, 208 S. W. 516, 517, the statute under construction defined an abortion as follows: " 'By the term "abortion" is meant that the life of the fetus or embryo shall be destroyed in a woman's womb, or that a premature birth thereof may be caused.' " The court said:

"* * * But the state in this case elected to charge and try him for destroying the life of the fetus in the womb, and not by bringing on a premature birth. That these two provisions are different is shown by the language employed by the Legislature. In one it would be necessary to destroy the life of the fetus in connection with the abortion, and in the other, with reference only to premature birth. * * *"

It is a necessary conclusion from the language of our statute—section 4401—that the crime denounced is not limited to abortion in its narrow meaning of expulsion of the fetus, but includes, as it plainly declares, the use of any means with intent to destroy an unborn child, resulting in

the destruction of such child. If the means used with that intent result in the death of the mother and thereby the destruction of the child, the death of the mother is an agency set in motion by the means used to destroy the child. A man wilfully shoots at another intending to kill him. His bullet misses, but strikes an object which explodes and kills him. He is still guilty of murder, although his intended result was accomplished in an unintended way. If the destruction of the child—the intended result—was accomplished by the means used, the perpetrator is guilty even though the death of the mother was not intended. The fact that he may also be guilty of another crime is beside the point in this case.

The indictment in this case is coextensive with the statute charging both the intent to destroy and to produce an abortion, the destruction of the child and the production of the abortion. The offenses stated disjunctively in the statute are charged conjunctively in the indictment, following an approved method of pleading. Beale's Cr. Pl. and Pr., section 104, p. 104.

It follows that the evidence of the Commonwealth as to the details and the circumstances of the death of the mother, resulting in the destruction of her unborn child, was admissible under the charge laid in the indictment and covered by the statute. The probative value of that evidence was for the jury, who by their verdict found it insufficient to prove the defendant guilty of the substantive offense charged. But being authorized for the reasons stated, its admission cannot be said to have resulted in an unfair trial. Indeed, it would be difficult, if not impossible, fairly to confine the evidence within more narrow bounds if the issue had been limited solely to the question of attempt.

Instruction No. 1, complained of, told the jury in the first paragraph that if the defendant "by any means, with intent to destroy said unborn child or to produce an abortion or miscarriage on the said Kerneda Bennett, committed or did any act or acts to destroy said child or commit an abortion on the said Kerneda Bennett, and the said Kerneda Bennett

died as a result of said act or acts, then they will find the said Iva Rodeffer Davis Coffman guilty of destroying said unborn child, as charged in the indictment."

That was followed by a paragraph, not complained of, instructing the jury what they should do if they found the defendant guilty of an attempt.

It is argued that the quoted paragraph erroneously submitted to the jury the decision as to whether Mrs. Coffman killed Mrs. Bennett. It did submit that issue, but it did so on the theory that the defendant used some means on Mrs. Bennett with intent to destroy her unborn child and did destroy such child by causing the death of Mrs. Bennett, the result being undisputed.

As observed, the jury found against that theory, but that is not conclusive that the Commonwealth was not entitled to have the question submitted to them. The evidence before the jury related to the substantive crime and the attempt; the first charged against the defendant in terms, and the second as a matter of law, and it was not error for the court to refuse to strike it out with respect to one of those charges. See *Williamson* v. *Commonwealth*, 180 Va. 277, 23 S. E. (2d) 240.

The effect of the submission of that issue in this case upon the indictment against this defendant for the murder of Mrs. Bennett, which the defendant says is pending against her, is a question not now before us and we express no opinion about it. Neither the trial court nor this court will be concerned with that question unless and until the Commonwealth seeks to prosecute on that indictment.

We find no prejudicial error and the judgment below is

*Affirmed.*