# Richmond

## Francis S. Miller, Committee of Estate of·Iva Rodeffer Davis Coffman v. Raymond J. Bennett, Administrator of Kerneda C. Bennett.

November 21, 1949.

Record No. 3527.

Present, All the Justices.

The opinion states the case.

*Francis S. Miller, D. B. Marshall* and *Paxson, Williams & Fife,* for the plaintiff in error.

*Charles A. Hammer, Jr.* and *Sam P. Conrad,* for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

Raymond J. Bennett, Adm'r of Kerneda C. Bennett, instituted this action against Iva Rodeffer Davis Coffman to recover $15,000 damages for the wrongful death of decedent. It was alleged that the death of decedent was the result of an abortion, or an attempted abortion, performed by defendant upon Mrs. Bennett. The trial court overruled defendant's contention that proof that decedent consented to the commission of the illegal or immoral act barred recovery. The jury returned a verdict for plaintiff in the sum of $8,000, on which judgment was entered.

This action was commenced before Mrs. Coffman was convicted under Code (Michie's 1942), sec. 4401, of an attempted abortion. After her conviction, and while she was confined in the State penitentiary, Francis S. Miller was appointed committee of her estate, and in his name the action was contested.

There is no substantial difference in the evidence introduced in this case, and that introduced in the criminal case, which need not be repeated, as a full statement of it is found in *Coffman* v. *Commonwealth*, 188 Va. 553, 50 S. E. (2d) 431, to which reference is made.

The decisive question presented is, whether consent of a mature married woman to an attempt to produce an illegal abortion, resulting in death, bars recovery, under Lord Campbell's Act, in an action by her administrator against the party attempting to procure the abortion. This question has not been decided in this jurisdiction.

It is conceded that if the consent of decedent to the commission of the immoral or illegal act would have been a bar to decedent's right to recover had she survived, such consent bars recovery in an action by her administrator for her wrongful death under the provisions of Code (Michie's 1942), secs. 5786, 5787. See *Street* v. *Consumers Min. Corp.*, 185 Va. 561, 39 S. E. (2d) 271, 167 A. L. R. 886, and cases there cited.

The general rule, that a party who consents to and participates in an immoral or illegal act cannot recover

damages from other participants for the consequence of that act, is well settled. The rule itself, and the reasons therefore, are clearly stated in the often quoted excerpt from the opinion of Lord Mansfield, in *Holman* v. *Johnson*, 98 Eng. Rep. 1120, which is as follows:

"No Court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa*, or the transgression of a positive law of this country, there the Court says he has no right to be assisted. It is upon that ground the Court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would then have the advantage of it; for where both are equally in fault, *potior est conditio defendentis*."

This general rule has been applied in Virginia in at least four cases, and in most, if not all, of the American courts. *American-LaFrance* v. *Arlington County*, 164 Va. 1, 178 S. E. 783, 99 A. L. R. 929; *Roller* v. *Murray*, 112 Va. 780, 72 S. E. 665, 38 L. R. A. (N. S.) 1202; *Levy* v. *Davis*, 115 Va. 814, 80 S. E. 791; *Bristol* v. *Dominion Nat. Bank*, 153 Va. 71, 149 S. E. 632; *Higgins* v. *McCrea*, 116 U. S. 671, 6 S. Ct. 557, 564, 29 L. ed. 764; *McMullen* v. *Hoffman*, 174 U. S. 639, 19 S. Ct. 839, 43 L. ed. 1117; *Continental Wall Paper Co.* v. *Louis Voight and Sons Co.*, 212 U. S. 227, 29 S. Ct. 280, 53 L. ed. 486; *The Florida*, 101 U. S. 37, 26 L. ed. 898; *Riggs* v. *Palmer*, 115 N. Y. 506, 22 N. E. 188, 12 Am. St. Rep. 819, 5 L. R. A. 340; *Levy* v. *Kansas City*, 93 C. C. A. 523, 168 F. 524, 22 L. R. A. (N. S.) 862; *Thomas* v. *Richmond*, 12 Wall. (79 U. S.) 349, 20 L. ed. 453.

The principle applies to civil actions, whether based on tort or contract. When applied to actions in tort, it is said that consent or participation in an immoral or unlawful act by plaintiff precludes recovery for injuries sustained as a result of that act, on the maxim *volenti non fit injuria*. It

is conceded that Mrs. Bennett consented to and participated in the immoral and illegal act when she solicited the services of Mrs. Coffman and submitted herself to treatment to produce abortion. If the general rule is applicable, then this action is barred.

Appellee contends that there is an exception to the general rule, and cites numerous authorities to support his contention. Each is based on the reasons stated in 1 Cooley on Torts, 4th Ed., sec. 97, p. 326, thus:

"The life of an individual is guarded in the interest of the state, and not in the interest of the individual alone; and not his life only is protected but his person as well. Consent cannot justify an assault. * * * Consent is generally a full and perfect shield when that is complained of as a civil injury which was consented to. * * * But in the case of a breach of the peace it is different. The state is wronged by this, and forbids it on public grounds. If men fight, the state will punish them. If one is injured, the law will not listen to an excuse based on a breach of the law. There are three parties here, one being the state, which for its own good, does not suffer the others to deal on a basis of contract with the public peace. The rule of law is therefore clear and unquestionable, that consent to an assault is no justification."

Mr. Francis H. Bohlen, in an article entitled "Consent as Affecting Civil Liability for Breaches of the Peace," XXIV Columbia Law Review, 819, states that the origin of this exception to the general rule is based on dictum in *Matthew* v. *Ollerton* (Comberbach 218), an old English case, decided in 1693. At the time this case was decided, both the Crown and the individual were interested in the outcome of the writ of trespass, the Crown in the fine to be imposed, and the individual for damages sustained. Subsequently, misdemeanors were punished by prosecutions in the name of the Crown and the writ of trespass was used exclusively by the individual to recover compensation for the wrong. Hence, Mr. Bohlen said: "So long as the writ

of trespass was the only machinery by which breaches of the King's peace, falling short of felony, could be punished, it is obvious that the consent of the private individual could no more defeat an action of trespass than his consent today can bar a criminal prosecution by the Crown."

Mr. Bohlen, in pointing out the fallacious reasoning upon which the exception is founded, said: "The statement that the State is a party in interest was, as has been seen, true, at least in theory until 1694. It has not been true since them. If, however, Chief Justice Cooley is not alluding to the State's interest as litigant, but to the State's interest in deterring persons contemplating breaches of the peace from their commission, his language would apply equally to make consent to any invasion of any legally protected interest which involved any element of criminality inoperative to prevent liability. Thus he would make the civil remedy of a person aggrieved by tortious conduct a prop to the inefficient administration of the criminal law, for unless the criminal law is inefficiently administered or unless the penalties imposed are insufficient deterrents, there is no need to pervert what is today a purely private remedy into a device to punish and so prevent crime, and to force this ill-mated couple, the civil and criminal functions of trespass, happily divorced in 1694, to masquerade occasionally as husband and wife. If the State really feels that its good order has been seriously disturbed by the assault or battery, it can and does prosecute the participants. Usually the State regards the offense done it as so trivial as not to warrant the trouble and expense of prosecution. It is curious to find courts so tender of the interests of the State as to preserve the civil liability of the participants in an offense which the State itself does not think is sufficiently serious to justify the trouble of prosecuting them."

Notwithstanding the fact that the State as such is no longer interested in an action of trespass instituted by an individual to obtain redress for private injuries, the exception to the general rule is extended in a few jurisdictions to per-

mit recovery where the woman consented to an illegal abortion resulting in personal injuries to her. See *Milliken* v. *Heddesheimer*, 110 Ohio St. 381, 44 N. E. 264, 33 A. L. R. 53; *Martin* v. *Hardesty*, 91 Ind. 239, 163 N. E. 610; *Miller* v. *Bayer*, 94 Wis. 123, 68 N. W. 869; *Lembo* v. *Donnell*, 117 Me. 143, 103 A. 11.

The better reasoned cases support the view that no recovery can be had in such cases. While abortion was not involved in *Levy* v. *Kansas City*, 93 C. C. A. 523, 168 F. 524, 22 L. R. A. (N. S.) 862, 870, Judge Sanborn, after reviewing many authorities on consent to an illegal act, said: "But the maintenance of actions to recover moneys or property lost, or damages sustained, through transactions or contracts wherein the plaintiffs were guilty of moral turpitude, or of the violation of a general law passed to effectuate a public policy, is prohibited by this rule, as well as the maintenance of actions upon contracts of that nature."

In *Goldnamer* v. *O'Brien*, 98 Ky. 569, 33 S. W. 831, 36 L. R. A. 715, it was held that a woman who consented to treatment for the purpose of procuring an abortion could not recover from the persons who had aided her in securing a doctor to produce the abortion, on the ground that a party who participates in an illegal act cannot profit by such act.

In *Szadiwicz* v. *Cantor*, 257 Mass. 518, 154 N. E. 251, 49 A. L. R. 958, it was held that recovery by an administrator for death and conscious suffering of his decedent was barred where the decedent, by voluntary participation in the procurement of the miscarriage joined in an act prohibited by statute.

In some states the anti-abortion statutes make the woman who consents to the procurement of an abortion upon herself an accomplice, and in others such a woman is not made an accomplice. But whether such a woman is or is not declared to be an accomplice is not regarded as material in a civil action brought by her to recover damages for injuries resulting from the abortion, or the illegal attempt to procure abortion.

It appears from the opinion in *Martin* v. *Morris*, 163 Tenn. 186, 42 S. W. (2d) 207, that the Tennessee statute does not make the woman who consents to take treatment for the purpose of procuring an abortion an accomplice. It was held that a woman of mature mind, who knew the serious consequences likely to result from such treatment, could not recover for personal injuries resulting therefrom, on the ground that she participated in an illegal or immoral act.

The anti-abortion statutes of the District of Columbia, Massachusetts, Kentucky, and Kansas, do not make the woman an accomplice, yet consent bars recovery in each of those jurisdictions. *Hunter* v. *Wheate*, 289 F. 604, 31 A. L. R. 980; *Szadiwicz* v. *Cantor, supra; Smartt* v. *State*, 112 Tenn. 539, 80 S. W. 586; *McNeill* v. *Mullin*, 70 Kan. 634, 79 P. 168.

In the following cases the anti-abortion statutes made the woman consenting to the treatment an accomplice, and recovery was denied: *Androws* v. *Coulter*, 163 Wash. 429, 1 P. (2d) 320; *Bowlan* v. *Lunsford*, 176 Okla. 115, 54 P. (2d) 666; *Nash* v. *Meyer*, 54 Idaho 283, 31 P. (2d) 273.

The Virginia anti-abortion statute, Code (Michie's 1942), sec. 4401, does not make the woman who consents to the treatment an accomplice. This statute was passed, not for the protection of the woman, but for the protection of the unborn child and through it society. Unnecessary interruption of pregnancy is universally regarded as highly offensive to public morals and contrary to public interest. It was not an indictable offense at common law to procure an abortion before the woman had become quick with child. In a criminal prosecution the consent of the pregnant woman is no defense. 1 C. J. S., Abortion, sec. 7, p. 319.

Appellee further contends that while there is no Virginia case deciding whether a person consenting to an abortion can recover for injuries resulting therefrom, yet Virginia is committed to the doctrine that recovery can be had for personal injuries sustained in an affray notwithstanding both parties voluntarily participated therein. Hence, by analogy, consent to an illegal abortion would not bar recovery.

This contention is based upon the opinion in *Matthews v. Warner*, 29 Gratt. (70 Va.) 570. The facts, as stated in the report of the case, were that Warner used "very abusive language" to Matthews, who, in retaliation, shot and killed him. The court held that the killing was done under circumstances which indicated that if Matthews was not guilty of murder, he was at least guilty of voluntary manslaughter. The pertinent and precise point decided was that the trial court correctly refused an instruction which read "that if the jury believe, from the evidence, that the death of the deceased, Montesco Warner, was the result of his own misconduct or neglect, then the jury must find for the defendant."

The court said: "This is not a case in which contributory negligence can be pleaded. The death in this case was not caused by negligence; it was caused by violence—by a wrongful act."

There is nothing in the statement of the case from which it can be inferred that Warner consented to engage in an affray, but even if he did, there was no justification for Matthews' use of a deadly weapon. The abusive language could, and doubtless would, have been considered in mitigation of punishment in a criminal prosecution, and in mitigation of damages in the civil action, but such language was not a defense to the criminal prosecution or a bar to recovery in the civil action.

A number of cases are cited in the briefs in which a distinction is made between the purpose of an anti-abortion statute and assault and battery and dueling statutes. These cases hold that the former class of statutes are not designed for the protection of the woman, but only of the unborn child and through it society, while the assault and battery, dueling, etc., statutes are designed for the protection of the individuals concerned. Hence recovery is allowed in one class of cases and denied in the other. See *Herman* v. *Julian*, 117 Kan. 733, 232 P. 864; *Bowlan* v. *Lunsford*, 176 Okla. 115, 54 P. (2d) 666.

However, we do not deny recovery in this case on the distinction between the two classes of statutes, but upon the ground that the plaintiffs' decedent, a mature married woman, was guilty of moral turpitude and participated in the violation of a general anti-abortion statute, enacted to effectuate a public policy.

The judgment of the trial court is reversed, the verdict of the jury set aside, and final judgment entered for defendant.

*Reversed and final judgment.*