53 F.3d 328
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 OHIO NATIONAL LIFE ASSURANCE CORPORATION, Plaintiff-Appellant,
v.
W. Gary CRAMPTON; L. Andrew Duke, Jr., Defendants-Appellees.
 No. 93-1850.
 United States Court of Appeals, Fourth Circuit.
 Argued: February 8, 1994.
Decided: May 9, 1995.
 
 ARGUED: Donald W. Lemons, Durrette, Irvin, Lemons & Fenderson, P.C., Richmond, VA, for Appellant. Richard Tyler McGrath, Kane, Jeffries, Foreman & Gayle, Rich mond, VA, for Appellees. ON BRIEF: Richard P. Kruegler, Durrette, Irvin, Lemons & Fenderson, P.C., Richmond, VA, for Appellant. Robert E. Kane, Jr., Kane, Jeffries, Foreman & Gayle, Richmond, VA, for Appellees.
 Before ERVIN, Chief Judge, WIDENER, Circuit Judge, and WILSON, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This is a dispute about insurance coverage. Appellant Ohio National Life Assurance Corporation (Ohio National) brought a declaratory judgment action in the district court in which it sought, in part, to have the district court declare that it was not liable on two disability policies it issued to appellee L. Andrew Duke.[1] After considering Duke and Crampton's motion for summary judgment,[2] the district court granted the motion and ordered Ohio National to continue making payments. We affirm.
 
 
 2
 * On September 13, 1982, Ohio National issued a disability insurance policy to Duke, which during the continuance of total disability pays benefits of $2,500 per month after a 60-day waiting period. The policy defines total disability as meaning "[y]ou: (a) can not do the substantial and material tasks of your own job due to Injury or Sickness; (b) are not now working and earning an income; and (c) are under a physician's care." The policy excludes from coverage any disability, among other things, that "is due to ... an intentional, self inflicted injury or sickness; [or] committing or attempting to commit a felony." In 1985, however, Ohio National notified Duke that these exclusions would not be enforced after July 1, 1985.
 
 
 3
 On January 1, 1988, Ohio National issued to Duke an additional policy of disability insurance. The 1988 policy does not contain an exclusion for disabilities arising from intentional self-inflicted injury or sickness or the attempting or commission of a felony. The 1988 policy provides: "You are Totally Disabled or have a Total Disability if: (a) you are not able to do the substantial and material tasks of your own job due to Injury or Sickness; and (b) you are under a Physician's care."
 
 
 4
 According to the complaint, on July 6, 1992, Duke was arrested and charged with several Virginia state law crimes involving aggravated sexual battery and exposing himself to a minor. On January 13, 1993, Duke entered a guilty plea on twelve counts, and was incarcerated the same day. He was sentenced two months later to a prison term of 80 years, but 72 years of the sentence were suspended.
 
 
 5
 In November of 1992, after his arrest but before his guilty plea, Duke filed a claim for disability benefits with Ohio National which stated that his disability began on July 6, 1992, the date of his arrest. Duke claimed that his disability was caused by anxiety and depression, and his contention was supported by two attending physicians' statements. Ohio National has been making disability payments to Duke, but has done so with reservation of right to demand repayment if it is found not liable on the policies.
 
 
 6
 The district court based its opinion on an assumption of disability, and Ohio National claimed that it reserved the right to contest disability should it otherwise lose the case. There was questioning by this court at oral argument which suggested that the court would consider such to be an advisory opinion. Following oral argument the parties filed with the clerk a stipulation stating in full as follows:
 
 
 7
 L. Andrew Duke, Jr. has been and continues to be afflicted with a sickness which causes him to be unable to do the substantial and material tasks of his own job. The stipulation did not mention precisely whether or not Duke has been under a physician's care or continues to be under a physician's care. Neither, upon our examination of the record, do we find any stipulation of that fact, and that fact is not addressed in the opinion of the district court. From the whole record, however, we conclude that the parties admitted that Duke has been and is presently under a physician's care. We arrive at this conclusion because that fact is necessary to constitute total disability, and oral argument disclosed the following response by the attorney for Ohio National:
 
 
 8
 Now there has been much discussion by the trial court and in the briefs about inclusions and exclusions in the policy. Now let me state without any reservation whatsoever that this case is not about inclusions and exclusions, this case is about the public policy of Virginia and how it is read into every contract of insurance interpreted under the law of Virginia....
 
 
 9
 * * * *
 
 
 10
 For the purposes of the case it is conceded that he[Duke] suffered from a disability.
 
 
 11
 Thus, we take it and decide that as agreed facts, Duke, at least since July 6, 1992, has been and continues until this date to be afflicted with a sickness which causes him to be unable to do the substantial and material tasks of his own job, and also that Duke, at least since July 6, 1992, has been and is now under a physician's care.[3] It is apparent from the stipulation that Duke is totally disabled within the meaning of the terms of both policies, there being no argument that he is not now working or earning an income.
 
 II
 
 12
 In its complaint for declaratory judgment, Ohio National sought a declaration that it is not liable on the two policies and that it is entitled to repayment of all payments made under the policies.[4] Its complaint is based on two contentions: (1) Virginia public policy prohibits payments under a disability insurance policy when the claimed disability was caused by the insured's own criminal acts; and (2) under Virginia law, liability on an income disability insurance policy ceases during periods in which the insured is incarcerated, that is to say "incarceration is a superseding legal cause of disability rendering ... [Duke] unable to receive benefits during incarceration." Ohio National brief, pp. 6, 13.
 
 
 13
 The district court found that Duke's disability fit the terms of the policy because there was no provision excluding it in the contract and further found that Virginia public policy would not alter the result. The district court also found that Duke's incarceration did not cut off his benefits to which Duke was entitled for disability which commenced before his incarceration.
 
 
 14
 We review grants of summary judgment de novo. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988). There being no disputed question of fact, we proceed to the merits.
 
 III
 A.
 
 15
 The claim that incarceration is a superseding legal cause of disability is, at least in this case, a question of contract interpretation rather than a question of public policy. While we know of no rule of decision requiring us to consider that question first when there is also a question of public policy involved which might reach the same result, cf. Ashwander v. TVA, 297 U.S. 288, 341 (1936), Justice Brandeis concurring, we think it is better for a diversity court to refrain from addressing questions of the public policy of a State when a like result might be obtained by construction of the common law of the State, as here. So we address first the question of whether Duke's incarceration is a superseding legal cause of disability rendering Ohio National not liable for benefits during Duke's incarceration.
 
 
 16
 The gist of the argument of Ohio National is as follows:
 
 
 17
 Because the benefits under the disability policies here are unquestionably income-dependent, and because Duke cannot earn an income while incarcerated, his imprisonment acts as a superseding legal disability to cut off any entitlement to benefits.
 
 
 18
 Ohio National brief, p. 19. The argument goes that the policies involved here insure for loss of income from earnings at a job; they are "income-dependent." And "income" is income from a job. So that if there is no loss of income from a job, there is no liability. The first question under this analysis must be, what is "income?"
 
 
 19
 "Income" is defined under the 1982 policy as:
 
 
 20
 Monthly benefit amount to be paid under this contract. Income to be paid for less than a month is prorated. (For example, the Income for one day is 1/30 of the Income for a month.)
 
 
 21
 The definition of "income" under the 1988 policy is the same. (The 1988 definition adds a reference to another part of the policy for amount of income and removes the parenthesis in the first definition.)
 
 
 22
 Thus, the terms of the policy are opposite to the position taken by the insurance company in this case. "Income" is not that which the insured was earning from a job; "income" is that which is paid to the insured by Ohio National under the policies involved here.
 
 
 23
 We turn next to the payment clause. The 1982 policy provides:
 
 
 24
 We will pay you Income while you are Totally Disabled: (a) after the Waiting Period; but (b) not beyond the Maximum Income Period. The Income amount for Total Disability is shown on page 3.
 
 
 25
 The payment provision under the 1988 policy is the same in haec verba.
 
 
 26
 Thus, the policy provides that income is an amount of money which will be paid to an insured during his total disability and under the terms of the policy. The right to payment is dependent on being totally disabled. Payment under the policies is not dependent on a loss of earned income from a job, except as that may relate to total disability.
 
 
 27
 Referring back to the definitions of total disability, as mentioned above, we see that under the 1988 policy there is no provision with respect to whether or not the insured is working or is earning an income, but under the 1982 policy an insured to be totally disabled must be "not now working and earning an income." But merely the provision under the 1982 policy, even constructing the same most favorably to the insurer, that an insured to be totally disabled must neither be working nor earning an income, does not convert the policy into what the insurance company calls "income-dependent" in face of a definition of "income" contained in the policy quite to the contrary. That provision, not even taking into account the ordinary rule of construction, that even when two constructions are equally possible, that construction most favorable to the insured will be adopted, St. Paul Fire & Marine Ins. Co. v. Nusbaum, 316 S.E.2d 734 (Va.1984), could only provide for a non-payment of benefits if an insured, otherwise totally disabled, is, in fact, working and earning an income.[5]
 
 
 28
 We thus construe the policy so that Duke's incarceration is not a superseding legal disability to cut off any entitlement to benefits to which Duke was entitled prior to his incarceration. See Baum v. Equitable Life Assurance Society of Va., 265 N.Y.S. 786 (N.Y.App. Term 1933).
 
 B.
 
 29
 The last question we consider is whether the public policy of Virginia would preclude payment in this case. Ohio National takes the position that Duke's disability was caused by his "own criminal acts and resulting incarceration." Ohio National brief p. 6. As a result, it claims that the public policy of Virginia prevents payment. In Virginia, "[a] policy of insurance is a contract, and, in the absence of constitutional or statutory barriers, the parties thereto are at liberty to make their own agreement." Quesenberry v. Nichols, 159 S.E.2d 636, 640 (Va.1968), quoting from Aviation Employees Insurance Co. v. Barclay, 206 A.2d 119, 121 (Md.1965). And, of course, should public policy intervene, that also would govern the provisions of an insurance contract. See Fedele v. National Liberty Ins. Co., 35 S.E.2d 766, 766-67 (Va.1945). Since there is no Constitutional or statutory impediment, we consider only the question of public policy.
 
 
 30
 There is no doubt at all that Ohio National has, in its insurance contract involved in this case, agreed to pay Duke for the disability complained of. It is an agreed fact that Duke is afflicted with a sickness that causes him to be unable to do the substantial and material tasks of his own job and that he is under a physician's care. That puts him squarely within the terms of the policy. Because of this total disability, Ohio National has contracted that "We will pay you income while you are totally disabled." This leaves only the defense of public policy under which Ohio National may avoid payment.
 
 
 31
 As we have only recently decided, federal courts in diversity cases whose function it is to ascertain and apply the law of a State as it exists should not create or expand that State's public policy. St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 782 (4th Cir.1995). In consideration of this question, as with the rest of the case, we particularly note that there is no contention by Ohio National that the criminal acts committed by Duke or the claim for benefits, either or both, was done with a view toward or for the purpose of collecting benefits under the policies. There is also no contention or evidence that any of the acts committed by Duke, or his resulting incarceration, were accomplished with a view toward defrauding Ohio National.
 
 
 32
 We also particularly note that in 1985 Ohio National removed from the policy the exclusions for disability "due to ... an intentional, self inflicted injury or sickness; [or] committing or attempting to commit a felony." Thus, it removed from the policy the very exclusions which arguably, at least, constituted a better defense to claims such as the one at hand than a defense we consider today.
 
 
 33
 With those thoughts in mind, we have examined each Virginia case depended on by Ohio National. They are, from its brief: Zysk v. Zysk, 404 S.E.2d 721 (Va.1990); Smith v. Combined Insurance Company, 120 S.E.2d 267 (Va.1961); and Miller v. Bennett, 56 S.E.2d 217 (Va.1949). At oral argument, Ohio National depended upon the unpublished decision of the district court in St. Paul Fire & Marine Ins. Co. v. Jacobson, which we will mention later and the reasoning of which we rejected on appeal in the same case in 48 F.3d 778, supra. Zysk was a case in which a wife sued her husband because she had contracted herpes from him, by engaging in consensual sexual intercourse with him prior to the marriage, and he having failed to inform her of his infectious condition. Neither had he attempted precautions to prevent the transmission of the disease to the wife. Because the premarital fornication was a crime under Virginia law and the wife consented and participated in it, she was barred from recovery, the Virginia law being that a party who participates in an illegal act cannot recover damages from other participants from the consequence of that act. Zysk, 404 S.E.2d at 722. Of course, that principle has no application here.
 
 
 34
 Smith was a case in which the insured, under a life insurance policy, was a fugitive from justice. Upon an exchange of shots with the officers, he barricaded himself in a barn and refused to come out, whereupon tear gas was fired into the barn. Apparently, on account of the tear gas, the barn caught fire, in which fire the insured was killed, and the wife of the insured, the policy beneficiary, claimed his death was due to an "accident" within the meaning of the policy. Recovery was denied under Virginia law, which is to the effect that if an insured puts himself in a position where he knew or should have known that death or serious bodily injury would be the probable consequence of his acts, his death is not an accident within the meaning of such insurance policies. That rule does not apply in this case.
 
 
 35
 Miller was a case in which a mature married woman had procured an attempt to have an illegal abortion performed upon her. The attempted abortion resulted in the death of the woman who procured it, and her administrator sued the woman who performed the abortion for the wrongful death of the woman procuring the abortion. Recovery was denied because the decedent was guilty of moral turpitude and participated in the violation of a general anti-abortion statute enacted to effectuate a public policy. The rule of the case is that one who participates in an unlawful act precludes recovery for injuries sustained as a result of that act. Miller, 56 S.E.2d at 219, 221. The holding of Miller also does not bar recovery in this case because the total disability here has been stipulated to be a result of a sickness rather than the result of illegal acts of Duke.
 
 
 36
 We thus see that the Virginia law depended upon by Ohio National does not sustain its position in this case, and under the Jacobson case we are not disposed to extend the public policy of Virginia any further than have the Virginia courts. In that connection, we should note that the unpublished case of Massachusetts Mutual Life Insurance Company v. Viguri, No. 88-1123-JLI (S.D. Cal. Apr. 1, 1992), decided under California law, which resulted in judgment for an insurance company, is the case on facts most similar to the case before us and depended upon by Ohio National. The public policy of California, however, was pursuant to an enacted statute, Sec. 533 of the California Insurance Code, to the effect that "[a]n insurer is not liable for a loss caused by the wilful act of the insured...." Virginia has no such statute and, indeed, that public policy, almost in terms, was rejected by us as being the public policy of Virginia in the Jacobson case at page 9 of our opinion.
 
 
 37
 We thus are of opinion there is no public policy of Virginia which would prevent recovery in this case, and the judgment of the district court is
 
 
 38
 AFFIRMED.
 
 WILSON, District Judge, dissenting:
 
 39
 I concur in the court's opinion, except Part III, A as to which part, I dissent.
 
 
 40
 Duke committed aggravated sexual battery and exposed himself to a minor, lost his job, and went to prison. Duke's physician says Duke cannot work due to his fragile mental condition caused by his arrest and conviction. But there is a more compelling reason why he cannot work. He is in prison. Even if his psychiatric condition were to improve he would not be able to work. Disability policies insure workers against actual and presumed losses that result from physical and mental disabilities. To recover, the insured ordinarily must be ready and willing to work but for his disability. Duke, however, cannot hold gainful employment until he is released from prison. Because I see nothing in the language of Ohio National's policy that subverts the policy's overall essential purpose of insuring against actual or presumed income losses that result from disabilities, I would hold that Duke's imprisonment is a superseding cause of his inability to work. I, therefore, respectfully dissent.
 
 
 
 [1]
 Appellee Crampton is the assignee of part of Duke's benefits
 
 
 [2]
 Duke and Crampton filed a Rule 12(b)(6) motion, which the district court converted to a summary judgment motion with the agreement of the parties
 
 
 [3]
 The 1982 policy provides that physician's care is not necessary if the maximum point of recovery has been reached and the insured is yet totally disabled. The 1988 policy has a similar provision. Maximum recovery is also not mentioned in any agreed fact
 
 
 [4]
 Ohio National also sought a declaration that it was not required to waive Duke's premiums, but it has not raised that issue on appeal, and we do not address the question
 
 
 [5]
 The 1988 policy has a provision that an insured is not "Totally Disabled" if he is "working at your own job and earning more than 25% of your Monthly Earnings Before Disability." This is consistent with our construction of the policy