## CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Cheryl A. Smith

v.

Cinebar Productions, Inc., et al.

December 11, 1995

Case No. (Law) 21717-RC

BY JUDGE ROBERT W. CURRAN

Cheryl A. Smith, plaintiff, seeks damages from Cinebar Productions, Inc., Chloe Productions, Inc., and Barbara Bottom Forst for damages resulting from her termination of employment on December 21, 1994. The plaintiff maintains that the termination was due to her pregnancy. She alleges that she has suffered damages because of Wrongful Discharge, Intentional Infliction of Emotional Distress, and Failure to Provide Reasonable Notice of Termination.

### Issues

(1) Is there a statutory or public policy pregnancy exception to the strict application of the doctrine of at-will employment in Virginia?

(2) Do the allegations as set out in Count C state a legally sufficient claim for intentional infliction of emotional distress?

(3) Has the plaintiff stated a cause of action for failure to provide reasonable notice of termination under Virginia law?

### Decision

(1) The Court overrules the demurrer of the defendant as to Count B.

(2) The Court sustains the demurrer of the defendants as to Count C.

(3) The Court overrules the demurrer of the defendants with regard to Count D.

## Discussion

The Court has reviewed the briefs submitted by counsel. In addition, the Court has reviewed the text and some cases in the Annotations *Sex Discrimination — Emotional Distress*, 61 A.L.R. 3d 944; *Employment Discrimination Under State Law*, 87 A.L.R. 3d 93; *Emotional Distress*, 52 A.L.R. 4th 853.

This Court finds that a female fired on account of pregnancy has a state law tort claim for wrongful discharge just as the *Lockhart* plaintiff had a state cause of action against her employer for sex discrimination in employment.

The position of the defendants that the Commonwealth would not include pregnancy discrimination in its public policy against sex discrimination ignores the historical interest of the Commonwealth in pregnancy.

The Virginia Supreme Court has stated that the question of public policy is as broad and variable as the question of what is fraud in a given case and is addressed to the good common sense of the *Chancellor*. No fixed rule can be given to determine what is public policy. The Court further stated that public policy is a principle of law to which freedom of contract or private dealings is restricted by law for the good of the community, the public good. *Higgins v. McFarland*, 196 Va. 889 (1955).

Examination of the history of the Commonwealth reveals that freedom of contract or private dealings with regard to pregnancy has been regulated since its early days.

Examination of the statutory law in the Code of Virginia, 1887, provides a constitutional provision that limits voting to males, a statute that pays a bounty for reporting mixed race marriage, and an abortion statute. This examination would indicate that long before the Commonwealth established a policy of equality in sex and race, there existed a public policy against any interruptions of pregnancy.

In interpreting these statutes against abortion, the Supreme Court has held that the intention of lawmakers was to protect the health and lives of pregnant women and their unborn children. *Anderson v. Commonwealth*, 190 Va. 665 (1950). Further, in the case of *Miller v. Bennett*, 190 Va. 162 (1949), the Court stated that unnecessary interruption of pregnancy is universally regarded as highly offensive to public morals and contrary to public interest and that the anti-abortion statute was enacted to effectuate a "public policy."

Although it can be argued that this public policy may have been modified by the enactment of § 18.1-61.1 in 1970, the commentaries on that

enactment, in particular, 5 *U. Rich. L. Rev.* 190 (1970), and 56 *Va. L. Rev.* 1411 (1970), refer to the statutes as modification of the abortion laws. Moreover, in a case since the new statutes, *Simopoulous v. Commonwealth*, 221 Va. 1059 (1981), the Supreme Court stated that the sovereign has a "compelling interest" in the preservation of the life of the fetus after viability and an interest in maternal health.

It appears that Virginia public policy as to pregnancy would be similar to West Virginia's as expressed in *Frank's Shoe Store v. West Va. Human Rights Commission*, 365 S.E.2d 251 (W. Va. 1986), in the same manner as it was on the issues addressed in *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985) (see cite at page 540 of *Harless v. First Nat'l Bank in Fairmont*, 246 S.E.2d 270 (W. Va. 1978)).

In addition to the West Virginia case, the out-of-state cases reviewed by this Court reveal only one case in the annotations and elsewhere in which pregnancy discrimination was not considered as sex discrimination. However, in that case, *Narragansett Electric Co. v. Rhode Island Com. for Human Rights*, 374 A.2d 1022 (R.I. 1977), a significant factor relied upon by the Court was the fact that out of 257 female employees in a twenty-year period up to 1977, only 2 or 3 returned to work upon "recovery from child birth." In that case, the Court felt there was a rational reason for a disability plan based upon such factors rather than discrimination. It would be interesting to know how the statistics might affect a court's decision in 1995.

A review of the allegations with regard to emotional distress do not allege conduct that has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Even those cases involving employment require a pattern of conduct rather than a single incident as alleged in the plaintiff's motion. The Court finds that the allegations in this case do not meet those set out in the cases examined.

It is the Court's position, based on its opinion with regard to Count B, that the demurrer to Count D should be overruled.